Jeffrey I. Carton (JC-8296)
Robert J. Berg (RB-8542)
Myles K. Bartley (MB-8431)
DENLEA & CARTON LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
(914) 331-0100
jcarton@denleacarton.com
rberg@denleacarton.com
mbartley@denleacarton.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON KOMMER on behalf of himself and all others similarly situated, | Civil Action No.: 7:17-cv-1724 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| -against- | **JURY TRIAL DEMANDED** |
| FORD MOTOR COMPANY, | |
| Defendant. | |

Plaintiff Brandon Kommer, by and through his counsel, Denlea & Carton LLP, respectfully files this Class Action Complaint on behalf of himself and a class of similarly-situated New York consumers who are current or former owners or lessees of Ford F-150 vehicles for model years 2015-2017, and alleges as follows:

## NATURE OF THE CASE

1. For 40 years, the Ford F-Series has been the best-selling pickup truck in the United States by a significant margin. Indeed, in January 2017, 57,995 of the F-Series vehicles were sold compared to 35,553 Chevrolet Silverado pickup trucks, the number two selling truck in the market.

2. Ford achieves its superior sales by aggressively, yet deceptively and misleadingly, advertising its vehicle as "Ford Tough" and possessing "Rock-solid Durability." Sadly, this "built Ford Tough" vehicle possesses an elemental defect: its doors won't lock when the temperature drops below freezing. Even with global warming, freezing temperatures still occur regularly throughout much of the Country, including throughout New York.

3. While the defect is obviously troubling, Ford's conduct is even more disturbing because it has known about this problem for years. Indeed, Ford has issued two separate technical service bulletins to address its defective vehicles, but has allowed the problem to persist without any recall from Ford, or any other correction to its misleading advertising.

4. As a result, consumers have been injured by being forced to incur out-of-pocket costs to fix the defective doors and over paying for a product that has diminished value due to its defective nature.

**THE PARTIES**

5. Plaintiff Brandon Kommer is a natural person of full age of majority who is domiciled and resides in Saratoga Springs, New York. In October 2015, Mr. Kommer purchased his 2015 Ford 150 XLT SuperCrew vehicle from New County Ford in Saratoga Springs.

6. Defendant Ford Motor Company is a Delaware corporation with its principal place of business at One American Road in Dearborn, Michigan 48126. Ford is in the business of designing, manufacturing, and distributing motor vehicles, including its F-150 vehicles.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. §1332(d)(2)(A).

8. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

9. This Court may exercise jurisdiction over Ford because Ford is registered to conduct business in New York, has sufficient minimum contacts in New York, and intentionally avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its vehicles, thus rendering jurisdiction by this Court proper and necessary.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the product at issue in this action within this judicial district and has done business within this judicial district.

## CHOICE OF LAW

11. New York law governs the state law claims asserted herein by Plaintiff and the New York class he seeks to represent.

## GENERAL ALLEGATIONS

**Ford Falsely Claims Its F-Series Vehicles Are Tough and Durable**

12. Ford claims its "Ford Tough" F-Series vehicles are the "best-selling trucks in America for 40 straight years." (http://www.ford.com/trucks/f150/2017/, last visited Feb. 28, 2017.)

13. Ford maintains that its F-Series vehicles, including the F-150, sell so well because:

> It's not luck. And it isn't coincidence. Since 1977, F-150 and Super Duty have been the best-selling trucks for some very real and hardcore reasons: Rock-solid Durability. . . . Leading the way for 40 straight years is grueling, intense and tough. Yeah. Just the way F-Series likes it.

(http://www.ford.com/trucks/f150/2017/, last visited Feb. 28, 2017.)

14. Ford boasts its F-150 trucks are: "'Battle-Tested' . . . [by] the F-150 engineering team . . . to deliver the safest F-150 ever." (https://media.ford.com/content/fordmedia/fna/us/en/news/2015/09/13/new-ford-tv-ads-highlight-f150.html, last visited Mar. 1, 2017.)

15. In a series of ads and promotions (including a video with ESPN's Sport Science host John Brenkus), Ford highlighted the F-150's "toughness, strength, and durability." (http://www.ford-trucks.com/articles/tough-science-tackles-f-150s-aluminum/, last visited Mar. 1, 2017.)

16. Despite these false and deceptive claims and ads, Defendant's trucks fail a basic requirement for any vehicle sold in New York: the doors won't latch closed when the temperature drops below freezing. Hardly the "tough" or "durable" truck that Defendant claimed and advertised to the consuming public.

4

**Problems Arise With Ford's F-Series Vehicles**

17. Multiple online car forums detail the continuous and ongoing problems that truck owners have had with the door latches in Ford's 2015, 2016, and 2017 F-150s.

18. One 2015 F-150 supercab owner complained: "Whenever it's cold out, we're talking 20° F and below, the door will not latch when closed." (http://www.f150forum.com/f2/2015-door-wont-latch-when-cold-328507/, last visited Mar. 1, 2017.)

19. Another F-150 owner wrote: "I woke up this morning to below freezing temps. This is the second time I had this type of problem, my doors and locks weren't opening or unlocking. (http://www.f150forum.com/f118/doors-locks-freezing-326413/, last visited Mar. 1, 2017.)

20. The same problems continued with 2016 F-150 owners.  One owner grumbled "I have a 2016 F150 Sport. So the first hard freeze here in the NW, and I open my truck door, and it wont (sic) latch shut. I cycled the locks, I even used the keypad on the driver side, still no latch. I went and got a hair dryer, finally it latched. Did it the next morning too, so I went back to the dealer."  (http://www.torquenews.com/3768/2016-ford-f-150-owners-come-unhinged-over-cold-weather-latch-problems, last visited Mar. 1, 2017.)

21. That owner wasn't alone. Another lamented "I got a 2016 XLT SuperCab and the last 2 mornings it was 12º and 1º and the door wouldn't stay closed. I had to get the WD40 out and slam the door pretty hard to go to work." (http://www.torquenews.com/3768/2016-ford-f-150-owners-come-unhinged-over-cold-weather-latch-problems, last visited Mar. 1, 2017.)

22. Ford is a major TV and print advertiser and its iconic "Ford Tough" advertisements are splashed across TV, newspapers, and magazines.

23. Mr. Kommer, like most consumers, has seen and is aware of Ford's "Ford Tough" advertisements and he considered those advertisements when he decided to purchase his 2015 Ford 150 XLT SuperCrew pickup truck.

24. Indeed, Mr. Kommer had seen Ford's ads about the redesign of its Ford F-150 truck on television, the internet, and Facebook prior to purchasing his Ford vehicle.

25. Those advertisements demonstrated and exhibited the supposed Ford "toughness" and durability and were a factor in Mr. Kommer's decision to purchase his vehicle.

26. But from the very outset, right after Mr. Kommer purchased his vehicle, Mr. Kommer had multiple issues with his new vehicle's doors and locks.

27. The problems Mr. Kommer encountered included: front, rear, driver and passenger side doors that would not latch close; electric locks that would not open; door handles not moving; locks not releasing; and having to use the door's exterior electronic keypad to lock the doors.

28. All of these problems were directly contrary to the supposed toughness and durability claimed by Ford for its F-Series vehicles.

**Ford Issues First Technical Services Bulletin**

29. Ford has long known that its F-150 vehicles do not perform as they should, but has failed to inform consumers about this ongoing defect to its best-selling vehicles.

30. As early as April 8, 2015, Ford knew that some "2015 F-150 SuperCab

6

and SuperCrew Cab vehicles built on or before 3/25/2015 may exhibit inoperative door latches during or after freezing temperatures." (SUPERCAB/SUPERCREW CAB - FROZEN OR INOPERATIVE DOOR LATCH - BUILT ON OR BEFORE 3/25/2015, TSB 15-0052, attached as Exhibit A.)

31. This technical services bulletin (or TSB) outlined the issue, the action needed to be taken by Ford's dealers and service providers, and the specific service procedure purportedly to fix the defective issue. In stark contrast, Ford provided no disclosure to current, former, or potential owners or purchasers of these defective vehicles.

32. The TSB's recommended actions included: removing all interior door panels; removing all the center door latch assemblies; using compressed air to blow dry all of the center door latch assemblies after removal; using compressed air to blow dry all of the handle assemblies; installing new door latch assemblies on SuperCab vehicles; using grease or lubricant on the steel cable and all moving components of the center latch assemblies; using grease or lubricant and spraying the inside of all front and rear door exterior handles; reinstalling all center door latch assemblies; and reinstalling all of the interior door panels.

33. But, as detailed above, Ford's F-150 customers continued to experience the same problems throughout 2015, 2016, and 2017 with Ford's 2015-17 F-150 vehicle models.

34. And Ford never made any affirmative disclosure about the problems outlined in TSB 15-0052 and failed to disclose to consumers that these problems plagued these vehicles.

7

**Ford Issues Second Technical Services Bulletin**

35. The continued malfunction of the latches in Ford's 2015-2017 F-150 vehicle models resulted in Ford issuing yet another technical services bulletin.

36. On November 18, 2016, Ford issued a broader, and more detailed, TSB to its dealers and service providers in an attempt to "fix" its ongoing problem. (FROZEN OR INOPERATIVE DOOR LATCH DURING FREEZING TEMPERATURES, TSB 16-0155, attached as Exhibit B.)

37. As with Ford's earlier TSB, Ford made no general, widespread disclosure of these continued defects to current, former, or potential owners or purchasers of its F-Series vehicles.

38. This new TSB specifically superseded the earlier issued TSB 15-0052.

39. Unlike the first TSB, this second TSB was not limited to the 2015 F-150 SuperCab and SuperCrew models built before March 25, 2015, but was expanded to include *all* F-150 models for *all* of *2015*, *2016*, and *2017*.

40. TSB 16-0155 explained that "Some 2015-2017 F-150 vehicles may exhibit inoperative latches on front doors and/or SuperCrew rear doors during freezing temperatures." (Ex. B.)

41. The TSB then set out the action needed to be taken and the service procedure to follow supposedly to remedy the defective condition. Those actions included: removing both front door interior door panels on all vehicles and both rear door interior door panels only on SuperCrew vehicles; removing door water shields; verifying the latch release cable is properly seated and the cable end is properly installed on to the outer handle; if improper installation is found and the cable has

8

become kinked, replacing the cable; removing both front door latch assemblies on all vehicles and both rear door latch assemblies on the SuperCrew vehicles; using compressed air to blow dry all the door latch assemblies after removal and all interior handle assemblies; replacing the door latch retaining brackets; installing the rain shield on the door latch brackets opposite the latch using Ford supplied hardware; potentially installing new door lock rods on all door latch assemblies; greasing or lubricating the steel cable and all moving exterior handle components while cycling the handle, all moving components of the latch assemblies, latch lock rod and all attachment points, and the inside of all front and rear door exterior handles; reinstalling all door latch assemblies; and reinstalling all of the interior door panels.

42. Even after issuing this second, and broader, TSB, Ford still failed, in any of its pervasive advertising, to disclose this defect or to inform current, former or potential Ford F-Series owners or purchasers of this defect.

**Ford's Problems Continue, But Ford Fails to Correct Its Misleading Advertising**

43. Despite issuing the two TSBs, one in March 2015 and the second in November 2016, Ford customers continue to experience the same problems.

44. Indeed, on January 5, 2017 one customer complained:

> I took my 150 in, in early Dec '16 for the frozen latch issue, truck warmed up in the bay and they could not reproduce the latch failure, replaced the latch so they say. When I picked it up I specifically asked about a TSB service tech said there was none and that's the first thing they look for. Fast forward a month and some bitter cold in the Seattle area and same problem non latching door latch.

(https://www.fordf150.net/forums/viewtopic.php?t=123522, last visited Mar. 1, 2017.)

45. And with full knowledge that its vehicles did not meet the claimed "toughness" or "durability" Ford posited in its numerous TV, print, and other advertisements, Ford never corrected or modified its false claims. In addition, Ford never disclosed these serious and ongoing problems and failed to inform consumers of this major defect. Instead, Ford has continued to market its vehicles in the same false and deceptive manner it has done throughout the class period.

## CLASS DEFINITION AND ALLEGATIONS

46. Plaintiff brings this action on behalf of himself and all other similarly situated consumers. Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that he or any class member may have suffered.

47. Plaintiff brings this action on behalf of himself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class:

> All consumers who, within the applicable statute of limitations period, purchased or leased in the State of New York a Ford F-150 model vehicle for model years 2015, 2016, and 2017 (the "Class Vehicles"). Excluded from the class are Ford, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased a Class Vehicle for resale.

48. **Numerosity**. This action is appropriately suited for a class action. The members of the class are so numerous that joinder of all members of the class is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed class contains thousands of purchasers or lessors of the Class Vehicles who have been damaged by Defendant's conduct as alleged herein. The precise number of class members is unknown to Plaintiff.

10

49. **<u>Existence and Predominance of Common Questions of Law and Fact</u>**.  This action involves questions of law and fact common to the class.  The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant made false or misleading representations regarding the Class Vehicles;

- Whether Defendant represented that the Class Vehicles were of a particular standard or quality when they were not;

- Whether the claims made by Defendant regarding the Class Vehicles discussed above are true, or are misleading, or objectively are reasonably likely to deceive;

- Whether the alleged conduct constitutes violations of the law asserted;

- Whether Defendant engaged in false or misleading advertising;

- Whether the Class Vehicles contain the defect described above;

- Whether Ford knew or should have known about the defective latches, but failed to disclose it to Plaintiff and Class members;

- Whether Ford omitted and concealed material information regarding the Class Vehicles;

- Whether Ford had and/or has a duty to disclose information about the defective latches prior to selling or leasing the Class Vehicles to Plaintiff and Class members;

- Whether the Class members obtained the benefits that Defendant represented the Class Vehicles have;

- Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

- Whether, as a result of Defendant's misconduct, the class is entitled to monetary and statutory damages, as well as equitable and injunctive relief.

50. **Typicality**.  Plaintiff's claims are typical of the claims of the members of the class, because, *inter alia*, all class members have been injured through the uniform misconduct described above, and were subject to Defendant's deceptive

representations, including the representations that accompany the sale or lease of each and every Class Vehicle (described in detail above) and were made on Defendant's websites and other advertising media.  Moreover, the named Plaintiff's claims are typical of the class members' claims.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the class.

51.  **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the members of the class.  Plaintiff purchased a Class Vehicle; and he relied upon the deceptive representations that were made in Defendant's marketing and advertising campaign.  As a result, Plaintiff has suffered an injury in fact as a result of Defendant's conduct, as did all class members who purchased Class Vehicles.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the class.

52.  **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would be virtually impossible for a member of the class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Furthermore, even if the class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues

raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

53. Plaintiff seeks monetary damages, including statutory damages on behalf of the entire class, and other equitable relief on grounds generally applicable to the entire class, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

54. Defendant has acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
**(Violation of New York General Business Law Section 349)**

55. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

56. Defendant have made false representations about the Class Vehicles, and so, the representations claimed are deceptive, and have the capacity, tendency, and effect of deceiving reasonable consumers who purchase the products.  Reasonable consumers would believe that Defendant's Class Vehicles were "Ford Tough" and able to have the doors operate correctly at temperatures at or below freezing.  In reality,

Defendant's Class Vehicles are unsafe and do not operate as Defendant claims. Defendant made the false representations about its products, those representations were misleading in a material respect to consumers, and resulted in the purchase of Defendant's products.

57. Defendant has deceptively advertised, marketed, promoted, distributed, and sold its Class Vehicles.

58. Plaintiff and the Class have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by having to incur out-of-pocket costs to repair the Class Vehicles, or in the alternative, by overpaying for a product that has diminished value due to its defective nature.

59. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

60. Plaintiff further demands injunctive relief enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 349 of the New York General Business Law.

**SECOND CAUSE OF ACTION**
**(Violation of New York General Business Law Section 350)**

61.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

62.     New York's General Business Law Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

63.     Section 350 defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates."

64.     Defendant's labeling, marketing, and advertising of its Class Vehicles is "misleading in a material respect," and thus "false advertising," as it falsely represents the products are safe and "tough" when, in reality, they are unsafe and defective.

65.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff and the New York Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

66.     Plaintiff further demands injunctive relief enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging,

or other representations, prohibited by Section 350 of the New York General Business Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.    Certifying this action as a class action as soon as practicable, with the class as defined above, designating Plaintiff as the named class representative, and designating the undersigned as Class Counsel.

B.    On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages.

C.    On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus treble damages.

D.    Awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E.    Enjoining Defendant from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Sections 349 and 350 of the New York General Business Law

F.    Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:   White Plains, New York
         March 8, 2017

                                          Respectfully Submitted,

                                          <u>/s/ Jeffrey I. Carton</u>
                                          DENLEA & CARTON LLP
                                          Jeffrey I. Carton, Esq. (JC-8296)
                                          Robert J. Berg, Esq. (RB-8542)
                                          Myles K. Bartley (MB-8431)
                                          2 Westchester Park Drive, Suite 410
                                          White Plains, New York 10604
                                          Telephone: (914) 331-0100
                                          Facsimile: (914) 331-0105
                                          jcarton@denleacarton.com
                                          rberg@denleacarton.com
                                          mbartley@denleacarton.com